IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LJL Holdings Lithonia LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | )  Case No. _____ |
| v. | ) |
| | ) |
| WALGREEN CO., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

LJL Holdings Lithonia LLC ("LJL"), for its Complaint against Defendant Walgreen Co. ("Walgreens"), alleges as follows:

### Nature of Action

1. This is an action for declaratory judgment arising from a commercial lease in Stonecrest, Georgia (the "Lease").

2. Under the terms of the Lease, Walgreens, as tenant, is responsible for all maintenance and resurfacing of the parking lot area surrounding the Walgreens location at 2945 Panola Road, Stonecrest, Georgia (the "Property"). Pursuant to the Lease, Walgreens must maintain, among other things, the parking areas, driveways, and landscaped areas; is responsible for resurfacing of those areas; and must do the patching, sealing and restriping of the parking lot. LJL's responsibilities as to the parking lot area are limited to "replacing" it when appropriate.

1

3. A new parking lot has an average lifespan of 20 to 40 years. With regular and appropriate maintenance, parking lots will last long enough to reach the upper end of that range, and beyond. Here, however, Walgreens failed to maintain and repair the parking lot at the Property, shortening its lifespan and increasing the costs for repair and/or replacement.

4. Having let the parking lot fall into disrepair after years of poor (or non-existent) maintenance, Walgreens now claims it must be "replaced" and has demanded LJL do so. Indeed, having failed to do even minimal maintenance, Walgreens has now threatened to engage in "self help" under the lease by hiring someone to "replace" the parking lot, and has threatened to deduct those costs from its monthly rent.

5. It is estimated that, due to Walgreens' lack of maintenance, it will now cost at least $135,000 to resurface and restripe the parking lot.

## **Parties**

6. Plaintiff LJL is a limited liability company organized under the laws of Florida. It is owned by Wildflower Investments I LLC and Lance Lazarus. Mr. Lazaraus is a natural person who is a citizen of Florida. Wildflower Investments I LLC is a limited liability company organized under the laws of the state of Delaware. Its sole member is Premier Trust, Inc. which is a Nevada corporation with its principal place of business in Nevada.

7. Defendant Walgreens is an Illinois corporation with its principal place of business in Deerfield, Illinois.

**Jurisdiction, Venue and Choice of Law**

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The citizenship of the plaintiff is diverse from the citizenship of defendant, and the costs about which the Complaint seeks a declaration exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b). The Property, where a substantial part of the events or omissions giving rise to the claim occurred, is in this district. In addition, the Lease provides that "[a]ny action brought to enforce the terms of this Lease shall be within the State and Federal courts of Georgia, regardless of diversity of jurisdiction between the parties."

10. The Lease states that it "shall be governed by the laws of the State of Georgia." Accordingly, Georgia state substantive law applies to this dispute.

## Factual Allegations

**Relevant Lease Terms**

11. On March 21, 2000, Fog Development, LLC (as landlord) and Walgreens (as tenant) entered into a commercial lease for the Property at 2945 Panola Road, Stonecrest, Georgia.[1]

12. The Lease term is January 1, 2001 through December 31, 2061. At the time it was signed, it contemplated the construction of a Walgreens store on the Property. As part of that construction, Fog Development provided a parking lot.

13. LJL is the successor in interest to Fog Development and is landlord under the Lease.

14. The Lease contains the following language pertaining to "PARKING":

7.(a) Tenant, at Tenant's cost and expense, shall maintain the parking areas, driveways, and landscaped areas of the Leased Premises, (including resurfacing [but not replacing], patching, sealing, and restriping the parking areas).

*See* Lease, attached as **Exhibit A**, at § 7(a).

15. The Lease also states that "Notwithstanding anything contained herein, however, Tenant shall have no obligation to perform nor pay any costs in connection

---

[1] At the time the Lease was signed, the Property was listed in Lithonia, Georgia. Stonecrest was established in 2017, and Property address now falls within its boundary.

with the following: (i) any replacements of…parking areas or other improvements thereon…" *Id.*

16. The Lease also provides that, "[i]n the event of litigation between Landlord and Tenant in connection with this Lease, the reasonable attorneys' fees and court costs incurred by the party prevailing in such litigation shall be borne by the non-prevailing party." *Id.* at § 23.

**Correspondence Between the Parties**

17. On July 20, 2020, Walgreens sent notice that it was terminating the Lease. In response, the parties negotiated an amendment to the Lease, providing for lower rent at Walgreens' request. The First Amendment to Lease ("Lease Amendment") is attached as **Exhibit B**. The Lease Amendment does not alter any terms relevant to this dispute.

18. In April 2022, the email address landlordprogram@walgreens.com sent an email to two individuals at L2 Partners, LLC ("L2 Partners"), which manages the Property, referencing an "on-site" survey Walgreens had conducted at the Property. The email claimed that the parking lot needed to be replaced at landlord's expense. Walgreens attached two PDFs: one containing a "Repair Map" and one containing "Before Photos" of the parking lot at the Property. The email did not attach any maintenance records.

19. On January 3, 2024, Walgreens sent a letter the law firm that was acting as L2 Partners' counsel in a separate lawsuit between Walgreens against L2 Partners. A copy of that letter is attached in **Exhibit C**. The letter purported to raise "serious parking lot issues" at the Property and other Walgreens locations at which L2 Partners acted as the property manager. The letter also referenced the ongoing lawsuit between Walgreens and L2 Partners.

20. The January 3, 2024 letter claimed that Walgreens had sent all maintenance records for the parking lots identified in the letter. Notably, Walgreens did not send any records for this Property. Neither the April 2022 letter nor the January 2024 letter demonstrated that Walgreens had fulfilled the conditions precedent to replacement of the parking lot at the Property by properly maintaining the parking lot, driveways and other areas for which Walgreens is responsible under the Lease. In apparent recognition of its failure to fulfill this precondition, Walgreens claim in the January 2024 letter that maintenance of the parking lot was irrelevant because the IRS sets a 15-year time period for depreciation of parking lots for tax purposes. *Id.*

21. On January 16, 2024, L2 Partners responded to Walgreens' January 3 letter through separate counsel. A copy of that letter is attached as **Exhibit D**. That letter explained that Walgreens had not complied with its pre-existing maintenance obligations and that "replacing" the parking lot, if truly needed, was caused by

Walgreens' prior breach of its maintenance obligations under the Lease. The letter advised Walgreens that the lack of maintenance records had forced L2 Partners to engage a third-party contractor to investigate the state of the parking lot at the Property.

22. To date, Walgreens has not sent LJL or L2 Partners any maintenance records for the Property despite numerous requests.

**Third-Party Contractor Assessment**

23. On January 12, 2024, third-party contractor All County Pavement ("ACP") conducted a survey of the parking lot at the Property. A copy of that survey is attached as **Exhibit E**.

24. In assessing the parking lot, ACP noticed that there was "sinking" that "should have been addressed previously." ACP also pointed out that waste dumpsters were not inside the designated enclosure and were, instead, sitting directly on the asphalt surface, causing damage to that surface. ACP also pointed out "[b]lock cracking throughout [the] property that should have been address by patch repair and crack-fill." ACP also pointed to "[a]lligatored areas throughout the entire property," demonstrating that "[c]orrect repairs should have been performed throughout to address these."

25. ACP did conclude that repairs had been "completed at various times" but "assess[ed] that these were more as a reactive/temporary repair." In addition,

ACP noted that the lot had been "seal-coated a number of years previous but without consistent cycle for seal-coating." ACP explicitly noted that coating in this manner, "will not add value or protect the asphalt material."

26. ACP stated that the parking lot was "in need of extensive repair and lack of a complete maintenance plan for a number of years" and ultimately concluded that the "[p]arking lot reaches the criteria for asphalt resurface a number of years ago."

27. ACP estimated the cost to resurface the parking lot to be $135,000.00.

28. LJL does not dispute that the parking lot needs extensive repairs. Those repairs, however, are needed because Walgreens failed to fulfill its Lease obligation to maintain the parking lot, leading to resurfacing long before the time that would have been needed but for Walgreens' utter failure under the Lease.

29. LJL seeks a declaration that Walgreens has failed to fulfill its obligations under the Lease and, as a result, does not have a valid claim against LJL for breach of the Lease.

**Walgreens' Preemptive Notice of Default**

30. On March 12, 2024 in the separate litigation between Walgreens and L2 Partners, L2 Partners filed a compulsory counterclaim against Walgreens alleging, among other things, violations of the Civil RICO statute.

8

31. Shortly after L2 Partners filed its counterclaim, on April 4, 2024, Walgreens sent LJL a demand letter purporting to demand that LJL or L2 Partners replace the parking lot at the Property and threatening that, if the parking lot were not replaced, within 30 days, Walgreens would engage in "self help" and deduct the cost of replacement from its rent payments.

## COUNT I
### (Declaratory Judgment)

32. LJL incorporates the allegations set forth in Paragraphs 1 to 31 as if fully set forth herein.

33. Pursuant to 28 U.S.C. § 2201(a), where a case of actual controversy exists within this Court's jurisdiction, the Court may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree.

34. Here, there is an actual controversy between the parties that is within this Court's diversity jurisdiction.

35. Specifically, Walgreens wrongly maintains that the repairs to the parking lot at the Property are LJL's responsibility and that Walgreens has the right under the Lease to engage in self-help by having the parking lot fully replaced and to then recuperate any costs expended. LJL, in reliance upon the express terms of the Lease, maintains that the repairs to the parking lot are Walgreens' responsibility

9

and, to the extent any replacement is necessary, it was caused by and/or hastened by Walgreens' prior breach of the Lease for failure to meet its repair and maintenance obligations.

WHEREFORE, LJL requests that the Court declare that:

      a.    Walgreens failed to fulfill its obligations to maintain, resurface, patch, seal, and/or restripe the parking lot at the Property;

      b.    In accordance with the terms of the Lease and applicable law, Walgreens has failed to fulfill a condition precedent to demand replacement of the parking lot;

      c.    Any costs necessary to remediate the parking lot at the Property are Walgreens' responsibility under the lease;

      c.    Walgreens is prohibited from deducting any costs for repairing or resurfacing the parking lot to remedy its current condition from future rent payments or otherwise seeing to recuperate these costs from LJL; and

      d.    LJL is entitled to its reasonable attorney's fees, and such other relief as the Court may deem just and proper.

Respectfully submitted.

**HOLLAND & KNIGHT LLP**

*/s/ Caroline J. Tanner*
Caroline Johnson Tanner
Georgia Bar No.: 392580
caroline.tanner@hklaw.com
1180 West Peachtree Street, NW, Ste.1800
Atlanta, Georgia  30309
(404) 817-8500 – Telephone
(404) 881-0470 – Facsimile

Michael Dockterman
IL Bar No.: 312675
mdockterman@Steptoe.com
Steptoe LLP (*Pro Hac Vice application pending*)
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1243 – Telephone
(312) 577-1370 – Facsimile

William R. Andrichik
IL Bar No.: 6302306
wandrichik@Steptoe.com
Steptoe LLP (*Pro Hac Vice application pending*)
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1273 – Telephone
(312) 577-1370 - Facsimile