IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LJL HOLDINGS LITHONIA LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:24-CV-1936-TWT |
| WALGREEN CO., | |
| Defendant. | |

**OPINION AND ORDER**

This is a declaratory judgment action. It is before the Court on Defendant Walgreen Co.'s ("Walgreens") Motion to Dismiss Under Rule 12(b)(1) or Alternatively Rule 12(b)(6). [Doc. 16]. For the reasons set forth below, Walgreens's Motion to Dismiss [Doc. 16] is GRANTED without prejudice under Rule 12(b)(1).

### I. Background[1]

This case arises from a dispute between Plaintiff LJL Holdings Lithonia LLC ("LJL") and Defendant Walgreens over real property located at 2945 Panola Road in DeKalb County (the "Property"). (Compl. ¶ 2). LJL seeks a declaration stating that, among other things, Walgreens failed to maintain the parking lot located on the Property in accordance with the lease and may not recuperate the cost of replacing the parking lot from LJL. (*Id.* at 10). The

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the dismissal motion under Rule 12(b)(6). *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

relevant facts are as follows.

LJL's predecessor-in-interest leased the Property to Walgreens in 2000 for a term of sixty years from January 2001 to December 2061. (*Id.* ¶¶ 11–13). Paragraph ¶ 7(a) of the lease provides the following with respect to the parking lot:

> Tenant, at Tenant's cost and expense, shall maintain the parking areas, driveways, and landscaped areas of the Leased Premises, (including resurfacing [but not replacing], patching, sealing and restriping the parking areas). Notwithstanding anything contained herein, however, Tenant shall have no obligation to perform nor pay any costs in connection with . . . any replacements of the . . . parking areas or other improvements thereon . . .

(Compl., Ex. A ("Lease") § 7(a) [Doc. 1-1]). In April 2022, Walgreens sent an email to L2 Partners, LLC ("L2"), the property manager of the Property, purportedly to request the replacement of the parking lot. (Compl. ¶ 18). Later, on January 3, 2024, Walgreens sent a letter to L2 about "serious parking lot issues" at five Walgreens locations managed by L2, including the Property at issue here. (Compl., Ex. C, at 1–2). On January 16, 2024, L2 sent a response to Walgreens, claiming that "Walgreens' pattern of neglect and failure to maintain the parking lots over the years is not only an unequivocal breach of contract but also stands as a mitigating factor impacting Landlord's obligations thereunder." (Compl., Ex. D, at 1). L2 also claimed in the letter that Walgreens had refused "on numerous occasions" to "provide information of its ongoing maintenance of the parking lots" beyond "a handful of invoices for simple

pothole repairs." (*Id.*). As a result, L2 commissioned a survey of the Property that same month to investigate the state of the parking lot. (Compl. ¶ 23).

On April 3, 2024,[2] Walgreens sent another letter to LJL supposedly to "demand that LJL or L2 Partners replace the parking lot." (*Id.* ¶ 31). Walgreens states in the letter that, "[s]hould Landlord fail to cure its breach within thirty (30) days, Walgreens is entitled to exercise any and all remedies available to it under the Lease and pursuant to applicable law, including the exercise of self-help and the subsequent offsetting of such costs from rent." (Def.'s Mot. to Dismiss, Ex. A ("Demand Letter"), at 2 [Doc. 16-2] (citing Lease § 17)). The thirty-day deadline refers to a thirty-day notice-and-cure period outlined in the lease. (Lease § 17). Before the thirty-day period ended, LJL filed this suit for declaratory judgment. Walgreens now moves to dismiss the Complaint under Rule 12(b)(1) and, alternatively, to dismiss under Rule 12(b)(6) [Doc. 16].

## II.  Legal Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial

---

[2] The Complaint alleges that the letter was sent on April 4, 2024. (Compl. ¶ 31). Walgreens clarified in its dismissal brief that the letter was sent on April 3, 2024. (Br. in Supp. of Def.'s Mot. to Dismiss, at 4 n.2 [Doc. 16-1]). It attached a copy of the letter as Exhibit A to its Motion to Dismiss [Doc. 16-2].

3

attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (quotation marks, citation, and brackets omitted). On a facial attack, therefore, a plaintiff is afforded safeguards like those provided in opposing a Rule 12(b)(6) motion. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation marks omitted). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999) (quotation marks and citation omitted).

### III.  Discussion

The federal Declaratory Judgment Act provides that a federal court may only adjudicate a case for declaratory relief if an "actual controversy" exists. 28 U.S.C. § 2201(a); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) (noting that Article III's "cases" and "controversies" requirement is

4

embodied in the Declaratory Judgment Act's "actual controversy" requirement). As the Supreme Court has explained:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree . . . . [T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The courts determine whether an actual controversy exists on a "case-by-case basis." *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1570 (11th Cir. 1995) (citing *Hendrix v. Poonai*, 662 F.2d 719, 721–22 (11th Cir. 1981)).

Beyond the actual controversy requirement, the Court possesses "unique and substantial discretion in deciding whether to declare the rights of litigants." *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1284 (11th Cir. 2021) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). The Act "provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting 28 U.S.C. § 2201(a)). As the Eleventh Circuit has explained, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration" when federal courts are presented with a declaratory judgment claim. *Cambridge Christian Sch., Inc.*

*v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1251 (11th Cir. 2019) (citing *Wilton*, 515 U.S. at 288). The Eleventh Circuit has also offered nine "guideposts" for federal courts facing a declaratory judgment action where a parallel state action is pending. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005). Although there is no parallel state court action at issue in the present dispute, several of the guideposts remain relevant to courts considering any declaratory judgment action. *See, e.g.*, *Smith v. Casey*, 741 F.3d 1236, 1244 (11th Cir. 2014) (quoting *Wilton*, 515 U.S. at 289) (referring to "the usefulness of the declaratory judgment remedy" and "the fitness of the case for resolution"); *Allstate Ins. Co. v. Emps. Liability Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971) (referring to the "useful purpose" consideration). These guideposts include "whether the judgment in the federal declaratory action would settle the controversy," "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue," "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing,'" and "whether there is an alternative remedy that is better or more effective." *Ameritas*, 411 F.3d at 1331.

In its dismissal brief, Walgreens raises three reasons why the Court should decline to exercise jurisdiction over this declaratory judgment action. It first argues that, rather than clarifying the legal relations between the parties to avoid future damages, the declaratory judgment sought in the instant case

6

would "require the Court to make detailed and technical factual findings purely about the parties' prior conduct." (Br. in Supp. of Def.'s Mot. to Dismiss, at 6-12). Second, litigating the present declaratory judgment action would settle only one part of the underlying dispute and would result in piecemeal litigation. (*Id.* at 6, 12-13). Third, Walgreens argues that "LJL's Complaint is a form of gamesmanship, designed to win a race to the courthouse to make [LJL] the nominal plaintiff at the expense of Walgreens' valid legal remedies." (*Id.* at 6, 13-17).

LJL argues in response that it filed its requested declaratory relief to "relieve itself of prematurely replacing the parking lot now and *in the future*" and to prevent Walgreens from engaging in self-help in the form of reducing future rent payments. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 4; *see also id.* at 5–6). LJL further suggests that the "practical likelihood that Walgreens will engage in self-help" is sufficiently high so as to be "immediate and real, rather than merely speculative." (*Id.* at 10 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712) (7th Cir. 2002)). According to LJL, it is thus "not exclusively seeking a declaration of Walgreens' past breach nor . . . seeking to avoid a finding that LJL breached," as Walgreens contends. (*Id.* at 3–4 (citing Br. in Supp. of Def.'s Mot. to Dismiss, at 7, 10)).

Ultimately, considering the totality of the circumstances and in light of the substantial discretion afforded to courts, the Court agrees with Walgreens

7

that dismissal of LJL's sole declaratory judgment claim is appropriate at this time. In essence, LJL has requested a declaration that it is not financially responsible for the replacement of the parking lot—or, in other words, Walgreens is not entitled to recover the costs of the replacement of the parking lot from LJL, through self-help or other remedies. Framed this way, LJL's requested declaratory relief seems at first glance properly sought and useful in clarifying the parties' legal obligations before LJL need take future action that risks accruing damages. *See Nat'l Tr.*, 12 F.4th at 1284; 22 U.S.C. § 2201(a). However, LJL's requested declaration is contingent on an initial finding by the Court that Walgreens did not fully perform its obligations under the lease to maintain the parking lot and that the lease therefore relieves LJL of its obligation to replace the parking lot—essentially, to adjudicate an affirmative defense to a breach of contract claim that Walgreens has not yet pursued. The Court agrees with Walgreens that, by asking the Court to address these fact-heavy breach-like allegations about Walgreens's past conduct, LJL is attempting to retrofit the declaratory judgment remedy into something it is not and attempting to circumvent the notice-and-cure process provided for in the lease for breaches of contract to the detriment of wise judicial administration.

First, "[t]he purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or a breach of some

8

contractual duty." *Back Bay Resorts SWF, LLC v. Holiday Hosp. Franchising, LLC*, 2015 WL 13120060, at *8 (N.D. Ga. Nov. 19, 2015) (alteration in original) (quoting *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949)); *see also In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 22 F. Supp. 3d 1322, 1331–32 (N.D. Ga. 2014) (finding a declaratory judgment claim appropriate where the plaintiffs did not already have "ripe claims for breach of express and implied warranties" and would otherwise "only qualify for declaratory relief" (emphasis omitted)). As Walgreens points out, LJL's requested relief is contingent on a factual finding that Walgreens has already failed to fully perform on the lease and thus relieved LJL of its remaining performance obligations regarding the replacement of the parking lot. Thus, the key inquiry in the instant case is backward-looking rather than forward-looking—it is a fact intensive investigation into Walgreens's past conduct and potential breaches by either side. A declaratory judgment is neither the appropriate nor most effective tool for such an investigation, as LJL is essentially asking the Court to preemptively determine whether it might be liable for breach of contract before Walgreens has pursued litigation of such a claim. *See Md. Cas. Co.*, 312 U.S. at 273. LJL's argument that it is excused from performance because Walgreens failed to satisfy a "condition precedent" to the lease—maintenance of the parking lot—is more appropriate as an affirmative defense to a breach of contract action. (Br. in Supp. of Def.'s

9

Mot. to Dismiss, at 13–14; Reply Br. in Supp. of. Def.'s Mot. to Dismiss, at 11 & n.9). Other courts have dismissed claims seeking to test affirmative defenses[3] under the guise of a declaratory judgment. *See, e.g.*, *Auto. Ins. Co. of Hartford v. Debord*, 2019 WL 9831958, at *2; *Penn Tank Lines, Inc. v. Jackson*, 2018 WL 465977, at *1 ("Plaintiffs' request for a declaratory judgment in truth requests an advisory opinion on the viability of an affirmative defense in advance of a threatened lawsuit."). In sum, LJL seeks an advisory opinion on its defense to a breach of contract claim that has not yet been pursued. "But, unless and until [Walgreens] makes a legal challenge to [LJL's decision not to cover the replacement parking lot], there is no controversy." *See Auto. Ins. Co. of Hartford*, 2019 WL 9831958, at *2.

Second, the Court's concern that there is some form of "procedural gamesmanship" at play further weighs in favor of dismissing this action. The lease contains a provision requiring each party to provide notice of any breach of contract and a thirty-day opportunity to cure the breach. (Lease § 17). In accordance with this provision, Walgreens notified LJL about L2's refusal to replace the parking lots upon request and informed LJL that it had thirty days to cure the supposed breach. (*See generally* Demand Letter). Before the end of

---

[3] Walgreens further notes that the affirmative defense of failure to satisfy a condition precedent "must be pleaded with particularity" under Georgia law. (Br. in Supp. of Def.'s Mot. to Dismiss, at 13–14 (first citing O.C.G.A. §§ 13-5-8, 9-11-9(c); and then citing *Nat'l Indem. Co. v. Berry*, 136 Ga. App. 545, 555 (1975))).

10

the cure period, however, LJL filed this suit. (Br. in Supp. of Def.'s Mot. to Dismiss, at 15–16). The Court agrees with Walgreens that LJL's filing appears to be an attempt by LJL to "depriv[e] Walgreens of the choice of whether or how to exercise its rights," litigate in LJL's "chosen forum," "reverse the dynamic from having to defend a claim for breach of contract," and "mask[ ] its defense as a claim for declaratory judgment." (Reply Br. in Supp. of. Def.'s Mot. to Dismiss, at 3; Br. in Supp. of Def.'s Mot. to Dismiss, at 16). Relatedly, and as Walgreens explains, the full scope of the dispute between Walgreens and LJL includes at least four other properties and their parking lots, yet LJL "chose *this* property to initiate suit." (Reply Br. in Supp. of. Def.'s Mot. to Dismiss, at 10; *id.* at 11 (arguing that "LJL plainly believes that there is some advantage to doing so")). The four other properties are located in Florida, Indiana, Tennessee, and Wisconsin—each a potentially different forum where Walgreens may have otherwise chosen to file suit. (Demand Letter, at 3). The Court additionally notes that, by LJL's couching its claim as a declaratory judgment action rather than a breach of contract action, the company has also seemingly avoided the required notice-and-cure limitations set out in the lease. The lease provides for the following:

> [I]f Tenant breaches any . . . promises and covenants of this Lease and if such other breach continues for thirty (30) days after receipt of notice from Landlord, Landlord *shall then but not until then, as its sole legal remedy but in addition to its remedies in equity, if available, have the right to sue* for . . . charges due . . . under the terms of this lease . . .

11

(Lease § 17(a) (emphasis added)). LJL's decision to pursue a declaratory judgment claim rather than a breach of contract claim with the required notice-and-cure period further amplifies the Court's suspicion of some form of gamesmanship.

Given all of the above considerations, the Court hereby grants Walgreens's Motion to Dismiss under Rule 12(b)(1). Because the Court finds dismissal appropriate under Rule 12(b)(1), the Court declines to address Walgreens's alternative Motion to Dismiss under Rule 12(b)(6).

### IV.   Conclusion

For the foregoing reasons, Defendant Walgreen Co.'s Motion to Dismiss [Doc. 16] is GRANTED without prejudice under Rule 12(b)(1). The Clerk is DIRECTED to enter judgment in favor of Walgreen Co. and close the case.

SO ORDERED, this <u>  13th  </u> day of January, 2025.

THOMAS W. THRASH, JR.
United States District Judge